## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KUNJUMON N. ZACHARIAH, and | ) | |
| GOOD SHEPHERD, INC. | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| BP PRODUCTS NORTH AMERICA, | ) | |
| INC., a Maryland Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AT LAW

Now come the Plaintiffs, Kunjumon Zachariah and Good Shepherd, Inc., by and through their attorneys, Sullivan Hincks & Conway, and for their Complaint against the Defendant, BP Products North America, Inc., state as follows:

## INTRODUCTION

1.    This is an action for violation of the Clayton Act as amended by the Robinson-Patman Act (15 U.S.C. Section 13); for violation of the Sherman Act (15 U.S.C. Section 2); for tortious interference with prospective business expectancy; and for breach of contract arising as a result of BP North America, Inc.'s scheme to run Plaintiffs' franchise out of business and replace it with a company-owned gas station through the use of discriminatory pricing and other wrongful means.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction under the laws of the United States, specifically the Clayton Act of the United States as amended by the Robinson-Patman Act (15 U.S.C. Section 13,

et seq.), the Sherman Act (15 U.S.C. Section 2, et seq.), 15 U.S.C. Section 26 and under 28 U.S.C. Section 1331 and 1337. This Court further has jurisdiction over the state counts based upon its pendent jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. 1367. Venue lies in this district pursuant to 28 U.S.C. Section 1391(b), since the acts complained of occurred within the geographic area encompassing this judicial district and the defendants do business within this district.

## PARTIES

3.     The Plaintiff, Kunjumon Zachariah ("Zachariah") is an individual residing in the State of Illinois within the geographical boundaries of this District. Zachariah is the owner of certain leasehold rights to the motor fuel sales facility located at 4769 West Sauk Trail, Richton Park, IL 60471 (the "Facility"). The Plaintiff is a franchisee as that term is defined in the Petroleum Marketing Practices Act, ("PMPA"), 28 U.S.C. 2801 et seq.

4.     The Plaintiff, Good Shepherd, Inc., is an Illinois corporation, doing business in the State of Illinois, and is the entity through which Zachariah conducted the retail business activities at the Facility. Plaintiff, Good Shepherd, Inc. and Zachariah shall hereinafter be collectively referred to as the "Plaintiffs".

5.     Defendant, BP Products North America, Inc. (hereinafter "BP") is a Maryland corporation, licensed and qualified to do business within the State of Illinois. BP is a franchisor as the term is defined at 15 U.S.C. 2801(B)(3) and a distributor as defined at 15 U.S.C. 2801(B)(6).

## FACTS COMMON TO ALL COUNTS

6.     On February 1, 2000, Plaintiffs purchased a retail gasoline station for $250,000.00 and began operating a retail gasoline station at the Facility under a lease entered into with

Amoco Oil Company, Inc. ("Amoco"). In addition to the purchase price, Plaintiffs also invested $100,000.00 in the Facility to construct a car wash.

7.      Plaintiffs' customers for the business at the Facility were comprised primarily of automobile and truck traffic and residents of the surrounding communities and consisted of a geographical area of approximately a 15 mile radius from the Facility.

8.      On March 4, 2004, Zachariah and BP, a successor of Amoco, entered into a Dealer Lease and Supply Agreement (the "Lease"), whereby Zachariah agreed to lease the Facility from BP.  A true and correct copy of the Lease is attached hereto as Exhibit "1".

9.      Under the Lease, Zachariah agreed to pay BP rent for the Facility in the amount of $12,322.00 per month and BP reserved the right to adjust the agreed monthly rent "according to the Region policy in effect at the time of the adjustment." BP agreed to make the rent adjustment policy available to Zachariah upon request.

10.      The Lease requires BP to act in good faith and requires a duty of fair dealing.

11.      At the time Zachariah signed the Lease with BP, BP's marketing strategy with regard to the sale of its gasoline products was to market and sell the gasoline products through a series of dealership locations, such as the one operated by the Plaintiff Zachariah herein (the "Dealership Marketing Strategy").

12.      At some time after Zachariah signed the Lease, BP implemented a marketing change in the Chicagoland area whereby BP decided to market and sell its gasoline products through company-owned and company-operated locations called "BP Connect" (the "BP Connect Strategy").

13.      One aspect of the BP Connect Strategy was to construct company owned "BP Connect" stores that met minimum development requirements including 25 parking spaces, 8

multi-product dispensers, a 4300 square foot building for a retail convenience store operation and between 1 and 1 ½ acres of land. ("Minimum Development Requirements.")

14.     At the time that Zachariah entered into the Lease with BP and the time Zachariah invested substantial sums of money to improve the Facility, Zachariah was not aware of any plans by BP to institute its "BP Connect Strategy."

15.     BP never advised Zachariah of the change in BP's marketing strategy.  Had he known of BP's plans, Zachariah would not have entered into the Lease.

16.     In order to accomplish the goals of the new BP Connect Strategy, upon information and belief, BP set out to terminate the dealer franchisee locations in close geographical proximity to the areas that BP had identified to place new BP Connect locations.

17.     Section 30 of the Lease contained a provision under which BP secured

a right of first refusal to purchase or otherwise acquire Dealer's interest in [the Lease], any franchise relationship thereto, and Dealers business as related to [the Lease] on the same terms and conditions as set forth in any contract entered into by Dealer in any bona fide arms-length transaction.

18.     Section 30 of the Lease also provided that in the event BP declined to exercise its right of first refusal, then BP would consent to the sale of the business to a third party, which consent would not be unreasonably withheld.

19.     On information and belief, in furtherance of its BP Connect Strategy, BP initiated a policy under which it prevented dealers such as Zachariah from selling his or her business by refusing to exercise its right of first refusal but then also refusing to grant Zachariah written consent to sell the business to anyone else.

20.     In addition, in furtherance of the BP Connect Strategy, BP unilaterally raised Zachariah's rent for the Facility without tying the raised rent to any market rate formula or legitimate regional policy but, instead, tying the increase to BP's objective of terminating

dealerships in close proximity to BP Connect stores. The Plaintiffs' Facility is located in an economically depressed area of Cook County, in Richton Park, Illinois and this area does not command the amount of the rent charged by BP.

21.    In addition, in furtherance of the BP Connect Strategy, in those instances where a dealer's location was not able to conform to the Minimum Development Requirements for a BP Connect such as Zachariah's Facility, BP refused to invest further monies into the imaging of the dealer's location and continued to brand the station under the old flame and torch mark of Amoco rather than the new upgraded mark featuring the green logos as found at the BP Connect stores. BP refused to invest any capital to upgrade the imaging at Zachariah's Facility.

22.    Contrariwise, in those instances where a particular dealer's location was sufficient to meet the Minimum Development Requirements – including, on information and belief, sites located at Plainfield Road and Cass Avenue in Darien, Illinois and at 75th Street and Route 83 in Willowbrook, Illinois – BP offered those dealers a monetary incentive to execute a mutual termination agreement in order to obtain the dealer's voluntary termination of the franchise relationship in accordance with the PMPA.

23.    In furtherance of its BP Connect Strategy, in several instances, BP identified specific preferable markets where BP sought to place "BP Connect" stores that were in close proximity with existing dealers.  In such instances, BP attempted to improperly terminate the existing dealer by relying on a public condemnation of a small portion of the property to justify terminating the existing dealer's lease in order to build its own "BP Connect" stores.

24.    Additionally, in furtherance of its BP Connect Strategy, in 2005, BP took advantage of the effects of Hurricane Katrina and other natural disasters to implement a so-called rationing of gasoline product to dealer locations which caused several dealer locations to run out

of gasoline while the BP Connect stores were not placed on any rationing. Upon information and belief, none of the BP Connect stores ran out of gasoline during this same time period.

25.    Additionally, in furtherance of its BP Connect Strategy and after Zachariah entered into the Lease, BP constructed a "BP Connect" facility within close proximity to Plaintiffs' Facility.

26.    Subsequent to constructing the nearby "BP Connect" facility and in violation of the Lease and the Clayton Act, BP engaged in a pattern of price discrimination against Zachariah.

27.    Section 4 of the Lease sets forth the amount that BP may charge the Plaintiff for the sale of gasoline.  Under Section 4, BP agreed that:

> (a) The price for motor fuels purchased by [Zachariah] from BP will be BP's dealer buying price (plus all taxes, duty, fees or charges levied on the products) for each grade of said products in effect for BP's pricing area in which the above-identified Facility is located at the time when title to said products passes form BP to Dealer or when the product is loaded, at BP's option....

28.    In September 2005 and subsequently, Zachariah conducted a survey of prices posted at the nearby "BP Connect" facility and compared those posted prices to the gross prices charged by BP to Plaintiffs.

29.    In a period of time in early September 2005, BP charged Plaintiffs a gross price of $2.95 per gallon for regular lead free gasoline while at the same time BP sold the same grade of gasoline to the public for $2.99 per gallon at the "BP Connect" station that BP built near Zachariah's facility.   Being forced to match the "BP Connect" price would have allowed Plaintiffs only a $.04 per gallon gross profit which would not have been sufficient to allow Plaintiffs to even pay the rent charged by BP.

30.    On September 19, 2005, BP charged Plaintiffs a gross price of $2.82 per gallon

for regular lead free gasoline while at the same time BP sold the same grade of gasoline to the public for $2.88 per gallon at the "BP Connect" station. Being forced to match the "BP Connect" price would have allowed Plaintiffs only a $.06 per gallon gross profit which would not have been sufficient to allow Plaintiffs to even pay the rent charged by BP.

31.    In a short period of time after BP opened the "BP Connect" in close proximity to the Plaintiff's Facility, the Plaintiffs' sales of gasoline plummeted from a pre-BP Connect Strategy volume of approximately 100,000 gallons of fuel per month to approximately 45,000 gallons per month. Even selling the gasoline at a level of 100,000 gallons per month at a $.06 per gallon gross profit margin would result in $6,000.00 gross income per month, well short of the unreasonably-increased rent being charged by BP.

32.    BP's price discrimination between its "BP Connect" stores and Plaintiffs' Facility, the subsequent fall in the volume of sales, and BP's unreasonably high, unilaterally-set rent charges instituted in furtherance of BP's scheme made it impossible for Plaintiff to earn a profit at the Facility.

33.    After seeing their volume of fuel sold plummet, Plaintiffs requested that BP lower Plaintiffs' rent but BP refused to make any concession. BP further refused to make any capital improvements at Zachariah's Facility or upgrade the imaging at Zachariah's Facility.

34.    At or about the same time, Plaintiffs requested BP to charge the Plaintiffs prices in line with what the cost of the gasoline enjoyed by the "BP Connect" stores but BP refused to charge the same price and, instead, BP continued to require that the Plaintiff maintain his operation at 24 hours per day and 7 days per week, despite the fact that few if any customers were coming to the Plaintiff's store because of the unfair pricing and were, instead, patronizing the "BP Connect" station.

35.     Shortly thereafter, Plaintiffs continued to verbally object to BP's continuing price discrimination and Plaintiffs protestations were ignored. Plaintiffs were advised that as a result of the BP Connect Strategy, dealers are "on their way out."

36.     In or around October 2005, BP sent Plaintiffs a notice of termination and, one week prior to the date specified on the notice, BP unilaterally boarded up Plaintiffs' store without notice and refused to provide Plaintiffs access to their own Facility to retrieve personal property, Plaintiffs' inventory and other property not owned by BP.

37.     BP's unfair and anticompetitive discriminatory pricing practices and other actions taken in furtherance of the BP Connect Strategy tend to, and in fact have, substantially lessened competition, created a monopoly on the market in BP/Amoco branded fuels and injured, destroyed and prevented competition.

38.     As a result of the acts of BP in furtherance of the BP Connect Strategy, including but not limited to BP's unfair and anticompetitive discriminatory pricing, Plaintiffs have been injured in their business, lost the value and investment in their franchise, lost their business, lost past and future profits and have been otherwise injured.

## COUNT I
## VIOLATION OF 15 U.S.C. § 13
## PRICE DISCRIMINATION

39.     Plaintiffs reallege paragraphs 1 through 38 above as though fully set forth within this paragraph of Count I.

40.     BP is engaged in the wholesale and retail sale of gasoline in interstate commerce to dealers and customers throughout the United States including as relevant herein.

41.     At all relevant times, Plaintiffs were engaged in commerce by selling fuels to the general motoring public from their Facility in Richton Park, Illinois.

42.    BP has illegally discriminated against the Plaintiffs in the distribution of BP fuel products of like grade and quality intended for resale in the greater Chicago geographic area by delivering gasoline to its "BP Connect" stores at lower charged prices, with favorable delivery terms, and through otherwise favorable treatment than that afforded Plaintiffs.

43.    The effect of such discrimination as outlined above has been to substantially lessen competition for the retail distribution of BP fuel products in the greater Chicago geographic area, to create a monopoly on the retail distribution of BP fuel products in the greater Chicago, Illinois geographic area, and to injure, destroy and prevent competition from Plaintiffs and other similarly situated dealers.

44.    As a consequence of BP's above-described price discrimination, Plaintiffs have been forced from the market and forced completely out of business because of the loss of sales and profits directly attributable to the discriminatory actions of BP.

45.    BP's actions are in violation of Section 2 of the Clayton Act as amended by the Robinson-Patman Act (15 U.S.C. § 13) and have caused the Plaintiffs to be damaged.

WHEREFORE, the Plaintiffs, Kunjumon Zachariah and Good Shepherd, Inc. respectfully request this Honorable Court to enter judgment in its favor and against the defendants, BP Products North America, Inc. as follows:

1.    For three times the Plaintiffs' actual damages pursuant to 15 U.S.C. §15(a),

2.    For punitive damages,

3.    For attorneys fees,

4.    For Plaintiffs' costs incurred,

5.    Plus such other relief as this Honorable Court deems just.

## COUNT II
## TORTIOUS INTERFERENCE WITH EXPECTANCY

46.     The Plaintiffs realleges paragraphs 1 through 38 above as though fully set forth within this paragraph of Count II.

47.     Prior to BP's institution of the BP Connect Strategy, Plaintiffs enjoyed an ongoing customer relationship with several parties included within the motoring public for the retail sale of gasoline products and products from Plaintiffs' convenience store.

48.     On the basis of these ongoing customer relationships, Plaintiffs had a reasonable expectancy of continuing to enjoy a further ongoing customer relationship with certain parties within the motoring public.

49.     BP knew of the Plaintiffs' ongoing relationship with these customers as a result of their respective knowledge and experience within the gasoline distribution industry and, on information and belief, through its observation of Plaintiffs' ongoing business.

50.     In or prior to September 2005, BP began discriminating against Plaintiffs on the basis of the price offered to Plaintiffs for the sale of gasoline products to Plaintiffs.

51.     In part, BP discriminated against Plaintiff took the form of offering to the motoring public, including several parties accustomed to purchasing motor fuel from Plaintiffs, fuel at a price that BP knew, as a result of BP's discriminatory pricing and unreasonable raising of rent under its BP Connect Strategy, Plaintiffs could not match.

52.     Subsequent to Plaintiff's demand upon BP to cease its discriminatory pricing practices as described above, BP further interfered with the Plaintiffs' expectancy and ongoing customer relations by boarding up the Plaintiffs' Facility with the intent of inducing these customers to cease buying gasoline from the Plaintiff and to commence purchasing through the BP Connect.

-10-

53.    As a result of the unlawful acts of BP as described above, these customers of Plaintiffs did in fact cease purchasing from Plaintiffs and, upon information and belief, commenced doing business with BP.

54.    As a result of the unlawful acts as described above, Plaintiffs have been damaged and will continue to be damaged by way of the loss of lost profits and sales they would have otherwise made but for the tortious acts of BP.

WHEREFORE, the Plaintiffs, Kunjumon Zachariah and Good Shepherd, Inc. respectfully request this Honorable Court to enter judgment in its favor and against the defendant, BP Products North America, Inc. as follows:

1.  For Plaintiffs' actual damages according to proof presented at trial,

2.  For punitive damages,

3.  For attorneys fees,

4.  For Plaintiffs' costs incurred,

5.  Plus such other relief as this Honorable Court deems just.

## COUNT III
## BREACH OF CONTRACT

55.    Zachariah realleges paragraphs 1 through 38 above as though fully set forth within this paragraph of Count III.

56.    On March 4, 2004, Zachariah entered into the Lease with BP, a copy of which is attached hereto as Exhibit "1".

57.    Under the Lease at Section 3, Zachariah agreed to pay BP rent for the Facility in the amount of $12,322.00 per month and BP reserved the right to adjust the agreed monthly rent "according to the Region policy in effect at the time of the adjustment." BP agreed to make the rent adjustment policy available to Zachariah upon request.

-11-

58.    BP breached Section 3 of the Lease by unilaterally and unreasonably raising Zachariah's rent without tying the raised rent to any market rate formula or legitimate regional policy but, instead, to BP's objective of terminating dealerships in close proximity to BP Connect stores.

59.    Under the Lease at Section 4(a), BP agreed that the price for motor fuels purchased by Zachariah from BP would be BP's dealer buying price (plus all taxes, duty, fees or charges levied on the products) for each grade of said products in effect for BP's pricing area in which the Facility was located at the time when title to said products passes from BP to Zachariah or when the product is loaded, at BP's option.

60.    BP breached Section 4 of the Lease by discriminating against Zachariah on the basis of the price offered to Zachariah for the purchase of fuel by selling BP branded gasoline products to the nearby BP Connect facility at a lower price than offered to Zachariah.

61.    In the State of Illinois, all contracting parties are subject to the duty of good faith and fair dealing.

62.    BP, through its institution of the BP Connect Strategy, breached its duty of good faith and fair dealing under the Lease in the following ways:

      a.    wrongfully discriminating against Zachariah in the sale of BP branded motor fuels on the basis of price,

      b.    unilaterally and unreasonably raising the rent of the Facility without tying the increase to any market rate formula or legitimate regional policy,

      c.    refusing to invest further monies into the imaging of the Facility and continuing to brand the Facility under the old flame and torch mark of Amoco rather than the new upgraded mark featuring the green logos as found at the

BP Connect stores,

d. implementing its so-called rationing of gasoline product to the Facility despite the fact that its nearby "BP Connect" store was not placed on any rationing,

e. constructing a "BP Connect" facility in close proximity to the Zachariah's Facility,

f. refusing to lower the rent charged to Zachariah's Facility when Plaintiffs' sales plummeted as a result of BP's discriminatory pricing scheme,

g. boarding up the Facility in violation of BP's own notice of termination, and

h. taking other actions pursuant to its BP Connect Strategy to run Plaintiffs' out of business and cause Zachariah to be unable to afford the rent payments on the Facility.

63.    As a result of BP's repeated breaches of the Lease, Zachariah been damaged and will continue to be damaged by way of the loss of his franchise, by the loss of profits and sales he would have otherwise made but for the breaches of BP, and loss of his investment in the Facility.

WHEREFORE, the Plaintiff, Kunjumon Zachariah respectfully requests this Honorable Court to enter judgment in his favor and against the defendant, BP Products North America, Inc. and award Zachariah his actual damages according to proof presented at trial, his costs incurred, interest and such other relief as this Honorable Court deems just.

**COUNT IV**
**VIOLATION OF 15 U.S.C. § 1**
**CONSPIRACY TO RESTRAIN TRADE**

64.    Plaintiffs reallege paragraphs 1 through 38 above as though fully set forth within this paragraph of Count IV.

65.    As part of its BP Connect Strategy, BP determined that it would take actions to support only those dealer locations able to sustain the Minimum Development Requirements for a "BP Connect" and replace and take actions to undermine and terminate those dealer locations, such as Plaintiffs' which could not sustain the Minimum Development Requirements.

66.    Acting in combination and in concert with those dealers that could sustain the Minimum Development Requirements and its company-owned stores, BP undertook several actions in connection with its BP Connect Strategy described above to drive out of business those dealers, such as Plaintiffs, that were unable to sustain the newly-developed Minimum Development Requirements.

67.    The actions taken by BP in combination and in concert with certain BP dealers under the BP Connect Strategy illegally discriminated against the Plaintiffs in the distribution of BP branded gasoline by granting to "BP Connect" stores certain gasoline cost discounts, allowances, and favorable deliveries, which resulted in a differentiation in pricing between what BP charged to the Plaintiffs and what BP effectively charged to the BP Connect stores for the purchase of commodities of like grade and quality, in commerce.

68.    BP has not given the same preferential pricing to the Plaintiffs which it has given to the BP Connect stores.

69.    The effect of such discrimination as outlined above is to substantially lessen competition for the distribution of BP products in the greater Chicago geographic area.

70.    As a result of the above described price discrimination, the Plaintiffs have been damaged in that they has been forced from the market and completely out of business as the result of the loss of sales and profits directly attributable to the discriminatory actions of BP as described above, all in violation of the Sherman Act 15 U.S.C. §1, et seq.

WHEREFORE, the Plaintiffs, Kunjumon Zachariah and Good Shepherd, Inc. respectfully request this Honorable Court to enter judgment in their favor and against the defendant, BP Products North America, Inc. as follows:

1. For injunctive relief,

2. For three times Plaintiffs' actual damages,

3. For punitive damages,

4. For attorneys fees,

5. For Plaintiffs' costs incurred,

6. Plus such other relief as this Honorable Court deems just.

Plaintiffs request a trial by jury.

Dated: 9-9-09

Respectfully submitted,
Kunjumon Zachariah
Good Shepherd, Inc.

By: _____
One of Their Attorneys

John J. Conway
Matthew P. Barrette
Sullivan Hincks & Conway
120 West 22nd Street, Ste 100
Oak Brook, IL 60523
(630) 573-5021

-15-